(76 South. 193)

No. 22230.

SLATTERY v. DONOVAN et al.

(June 30, 1917.)

*(Syllabus by the Court.)*

LANDLORD AND TENANT ☞53(2) — RIGHTS OF TENANT—PURCHASER.

One does . not, of necessity, convey, with property that he sells, all the rights of action that may have accrued to him during, and by reason of, his ownership, and, though he may have a tenant, with a long lease, who has never paid his rent, his vendee has no right to annul the lease on that account, and the less so if he buys subject to the lease; and the same is true where, as in this case, there is a sale of a long lease and there are subtenants in possession under leases which the vendor might dispute, but the contract of sale is silent as to such rights, and the vendee buys subject to the leases, knowledge of which he admits, since the obligation to respect the leases constitutes part of the price, and the right to annul them, upon grounds previously existing, is not conferred on him.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 130, 131, 134, 135.]

Appeal from First Judicial District Court, Parish of Caddo; R. D. Webb, Judge.

Action by J. B. Slattery against R. F. Donovan and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Alexander & Wilkinson and Slattery & Slattery, all of Shreveport, for appellant. Foster, Looney & Wilkinson, of Shreveport, for defendant R. F. Donovan. Blanchard & Smith, of Shreveport, for appellees Donovan and Demopolis.

MONROE, C. J. In order to facilitate a better understanding of the opinion which follows, we recapitulate the facts of the case, to wit:

E. Longuipie, the owner, leased to J. T. Hagens, for a term ending in the year 2000, the whole of lot 9, in block 32, city of Shreveport, which lot was then, or afterwards, divided into five smaller lots, of which two, considered together, have a frontage of 40 feet on Texas street by a depth and side line on Marshall street of 70 feet, and three have, each, a frontage of 30 feet on Marshall street, by a depth of 40 feet between parallel lines. The subleases of the two lots fronting on Texas street are, alone, in controversy in this suit. Those lots are covered by a single building, heretofore divided into two tenements, the ground floors of which were formerly occupied by the Bon Ton Restaurant and the Manhattan Saloon, respectively, and bear the municipal numbers 427 and 429 Texas street, 429 being the corner tenement. By two contracts, entered into on October 23 and November 14, 1910, respectively, Hagens sublet the entire premises to C. M. Taylor for a term ending January 1, 1915, with the stipulation that:

"The leased premises shall not be sublet without the written consent of the lessor, obtained in advance."

Taylor, nevertheless, without obtaining such written consent, in November, 1910, sublet the lower floor of 427 to R. F. Donovan, but, according to Donovan's testimony, Hagens gave his verbal consent thereto, and Donovan occupied the premises to his knowledge and without objection on his part. Beyond that, on April 10, 1911, Hagens made a new lease to Taylor for a term beginning upon the expiration of the existing lease and ending on January 1, 1920, in which the property is described as "the building on the corner of Marshall and Texas streets * * * now occupied by C. M. Taylor and R. F. Donovan," and on the following day Taylor subleased the lower floor of 427 to Donovan for a like term: both contracts, however, containing the stipulation above quoted in regard to subleasing, and no written consent having been obtained from Hagens for the sublease to Donovan. On August 7, 1912, Taylor executed an instrument (which was placed on record August 7, 1914) reading as follows:

"It is agreed by and between C. M. Taylor and R. F. Donovan that, whereas, R. F. Donovan leased from C. M. Taylor the premises No. 427 Texas street * * * in two leases * * * that, whereas, in the two leases, there is contained a clause prohibiting the lessee, R. F. Donovan, from subletting the leased premises without the written consent of the lessor; that the said C. M. Taylor hereby agrees that this shall be a written consent for the said R. F. Donovan to sublet the premises leased in the leases referred to, at any time, to any person that he may see fit, now and until the expiration of the two leases."

Thereafter, on August 22, 1912, Mrs. Hagens, widow of J. T. Hagens, who appears to have succeeded to the rights of her deceased husband, made the following indorsements on the subleases of November 14, 1910, and April 10, 1911, from Hagens to Taylor, to wit (on that of November 14, 1910, which related more particularly to 427 Texas street):

"I hereby consent to the assignment of this lease to J. C. Trichel and W. P. Hall, subject to the terms and conditions therein stated"

—and, on the sublease of April 10, 1911, which included both 427 and 429:

"I hereby consent to the assignment of this lease to J. C. Trichel and W. P. Hall, with the understanding that the building is to be occupied by the Trichel Drug Company."

The two indorsements are followed by the assignments, by Taylor, to Trichel and Hall, of all his right in the two leases and by their assumption of his obligations thereunder.

It appears from Donovan's testimony that, in October, 1913, he sublet to John Demopolis the premises No. 427, as leased by him from Taylor, and it is admitted that Demopolis has leased part of those premises to O'Gorman.

We also find in the transcript, among the admissions dictated by the several counsel in the case, the following:

"By J. D. Wilkinson: It is admitted that J. D. Wilkinson wrote Mrs. J. T. Hagens—her son having died before that time—and who had control of the leased premises, as soon as he learned that Mr. Donovan had made a sublease of the premises to John Demopolis, that he, representing Mrs. Hagens, immediately wrote to W. P. Hall and John C. Trichel, who held the Taylor lease on the premises, notifying them of this sublease and demanding that it be canceled. One, two, or possibly three letters were written to them, stating that, unless they took steps to have this sublease canceled, I (Mrs. Hagens) would bring suit against Hall and Trichel to cancel the entire lease. It is admitted that Judge Hall came to see me and told me that he would file suit within a few days—that he had it in preparation then—which he did. The suit was filed and judgment rendered," etc.

The suit thus mentioned was decided by the district court in favor of plaintiffs, but the judgment was reversed on the appeal to this court (Trichel et al. v. Donovan, 138 La. 985, 71 South. 130), and it was pending the appeal that, on June 4, 1915, plaintiff herein purchased from Mrs. Hagens the lease of the Longuipie property, which transaction is evidenced by a written instrument containing,

among others, the following stipulation, to wit:

"This sale is made and accepted subject to the leases now made and existing on said property, the terms and conditions of which have been stated to said vendee, and all rent notes or rent obligations are hereby transferred and delivered to the said Slattery with all the rights and privileges appertaining thereto, as held by these vendors."

Within a few weeks after the judgment of this court, in the suit of Trichel v. Donovan, became final, plaintiff instituted this suit, it being a summary proceeding under section 2155 (as amended and re-enacted) and section 2158 of the Revised Statutes, for the recovery of possession of leased premises, in which he prays that the leases to Trichel and Hall, Donovan, Demopolis, and O'Gorman be decreed null, and they be ordered to surrender the property held thereunder. The grounds of action as set forth in the petition are, in effect, that the Trichel Drug Company, as it existed at the date of the assignment of the sublease to Trichel and Hall, had ceased to exist by reason of insolvency; that the tenant by that name which had been installed was a different concern; and

"that the said W. P. Hall and John Trichel, by permitting the occupancy of said leased premises by any other than the Trichel Drug Company, as originally intended, and the said R. F. Donovan and John Demopolis, by subleasing the said premises, have violated the obligation of said lease from J. T. Hagens to C. M. Taylor, the said Taylor nor your petitioner never having given the requisite consent to said subleases or to the occupancy of said premises by the present occupants; and that your petitioner is entitled to have the said premises returned to him, and the leases under which the said W. P. Hall and John Trichel, the said R. F. Donovan and the said John Demopolis and the said A. H. O'Gorman now occupy said property canceled."

It will be seen, therefore, that the complaint against Hall and Trichel is that the Trichel Drug Company, installed by them in the premises, is not the identical company, composed of the identical stockholders, that is referred to in Mrs. Hagen's consent to the assignment of the lease to Hall and Trichel,

and that the complaint against Donovan is, not that the sublease to him was unauthorized, but that the subleases by him to Demopolis and by Demopolis to O'Gorman were unauthorized. In the last brief filed in this court, on behalf of plaintiff (since the rehearing was granted) we, however, find the following:

"As we understand the case, it has narrowed down to the following propositions: The ratifications of the subleases held by Donovan and Demopolis. We are not particularly concerned with Donovan, Demopolis, and O'Gorman, as our suit is leveled against the lease held by Hall and Trichel. We allege, as against Hall and Trichel, that they have violated the lease by permitting Donovan, Demopolis, and O'Gorman to occupy the half of the building. We show by the written consent of Mrs. Hagens to Taylor to assign his lease to Hall and Trichel * * * that she consented on the sole condition that it should be occupied as a drug store. She did not consent that it should be occupied as a cigar store, a fruit store, or a shoe-shining parlor, or den, as counsel for defendant described it in their brief for rehearing, and as what, in reality, it is. The court, without question, correctly granted a rehearing herein, as the lease of Hall and Trichel, our lessees, must stand or fall as a whole."

We do not interpret the petition as alleging that Hall and Trichel have violated their contract by permitting Donovan, Demopolis, and O'Gorman to occupy the half of the building, but as alleging such violation by reason of their permitting the Trichel Drug Company, as at present constituted, to occupy the building, save that part occupied by the others, the fact being that the sublease from Taylor to Donovan expressly declares that it includes only the lower floor of 427, and it is not pretended that Donovan or those claiming under him are in possession of any other space. Dealing with the matter from that point of view, it will be noted that, on April 10, 1911, J. T. Hagens leased to C. M. Taylor "the building * * * now occupied by C. M. Taylor and R. F. Donovan," that Taylor subleased the lower floor of 427 to Donovan on the following day, and that on August 22, 1912, Mrs. Hagens as the successor of J. T. Hagens, consented to the

assignment of the lease (of property which, in the absence of evidence to the contrary, she must be held to have known was occupied, in part, by Donovan) "to J. C. Trichel and W. P. Hall, with the understanding that the building is to be occupied by the Trichel Drug Company."

In the, then, situation, the obligation rested upon Mrs. Hagens, as lessor, or perhaps, upon Taylor, to put Hall and Trichel, as lessees, in possession of the leased premises, but no steps were taken. in that direction, as to the lower floor of 427, and Donovan was left in undisturbed possession from August 22, 1912 (as he had been before) until sometime in 1914 or 1915, after his sublease to Demopolis, when Mrs. Hagens' attorney wrote to Hall and Trichel that the sublease must be canceled; otherwise that suit would be brought to annul their lease. It does not appear to us, however, that the obligation to dispossess either Donovan, whom they found in possession, or those holding under him, could be so readily shifted to the shoulders of Hall and Trichel, which, as we take it, accounts for plaintiff's failure to rest this action against them upon their failure to discharge that obligation. Even if it had been rested on that ground, however, it could not be maintained, since it is admitted that Hall and Trichel attempted to comply with Mrs. Hagens' demand by bringing suit against Donovan and his subtenants, and, as they were not originally responsible for their possession, it can hardly be said that they became responsible by reason of the failure of their attempt to dispossess them. As to plaintiff's assertion that the Trichel Drug Company, which Hall and Trichel have installed in 429 and the upper part of 427, is not the company that was contemplated in Mrs. Hagens' consent to the assignment of the lease, we have little to add to what has been said in the opinion heretofore handed down. The

sublease to Taylor was assigned, with Mrs. Hagens' consent, to J. C. Trichel and W. P. Hall, with the understanding that the building was to be occupied by the Trichel Drug Company, and, as there was nothing in the consent or the assignment to prevent the members of that company from reorganizing it, as its necessities might require, the fact that they found it necessary to reorganize and to take in a new member, bringing, probably, additional capital, furnishes no basis for the charge that they have not complied with their contract. This suit, as to Hall and Trichel, is therefore not well founded.

Upon the former hearing of the case, the stipulation in the act whereby plaintiff acquired the Hagens lease, to the effect that the sale was "made and accepted subject to the leases now made and existing on said property, the terms and conditions of which have been stated to said vendee," etc., was not urged on behalf of defendants, either in the oral or written argument but it was sufficiently set up in the pleadings, and was particularly urged in the application for, and in the argument upon, the rehearing; and, upon mature consideration, we are of opinion that it is conclusive as against the right of the plaintiff to prosecute this suit. It is quite true, as we have said in the opinion heretofore handed down, that in the lease from Hagens to Taylor the former reserved, as he had the right to do, the privilege of determining to whom Taylor should sublet the premises, and that certainly, Demopolis and O'Gorman having been installed as subtenants without his consent, he had the right to dispossess them, and, perhaps, the right to dispossess Donovan also, since Donovan cannot be heard to claim the benefit of the recognition accorded him in the lease to Taylor of April 10, 1911, and at the same time plead ignorance of the contents of that

lease, and his verbal and uncorroborated testimony to such recognition, as against one whose lips are closed in death, would be insufficient to support his contentions. The plaintiff is, however, at once a business man and a member of the bar, of long experience, particularly in transactions relating to real estate, and his dealings in this instance relate to real estate in the very heart of the city in which he has long made his home and conducted his affairs. When, therefore, he bought the Hagens lease, extending over a period of 86 years, involving expenditures approximating $200,000, and promising a return that we are unable to estimate, we are bound to assume that he acted intelligently and with thorough knowledge of all the obligations to which he pledged himself. The lease that he has acquired will have 80 years to run after the subleases which are here attacked have expired, so that, though they appear to be fairly remunerative, they will not materially affect the general result. It may therefore be readily understood that he was willing to accept them, without cavil, and quite as readily understood that Mrs. Hagens, who had but recently lost her husband and, as we infer, her only son, should have preferred that he do so, and that she be left entirely free of the whole matter. How far Mrs. Hagens was informed as to the leases then existing upon the property we are unable to say, but plaintiff had the means of knowing, it was to his interest to know, he has not taken the stand to say that he did not know, and we presume that he knew, the exact situation, and that, when he accepted the sale of the Hagens lease, subject to the existing leases, he understood the existing leases to mean those under which the then tenants were occupying the property. The stipulation in question might, no doubt, have been so worded as to confer upon him whatever rights Mrs. Hagens may have had, or may have thought she had, to sue for the annulment of the existing leases. She, or her legal adviser, for instance, seemed to have been under the impression that she had a right of action on that account against Hall and Trichel, but the most that she did in that direction, through her counsel, was to threaten them with such an action if they did not take steps to cancel the sublease to Demopolis, the implication being that, if they did take such steps, she would not bring the action; and yet, though it was after they had brought the action and had obtained judgment in the district court, and while the case was pending on appeal, that she sold her own lease to plaintiff, subject to the existing leases, plaintiff contends that he thereby acquired a right of action to annul the lease to Hall and Trichel, which, to us, is inconceivable.

On the other hand, if the stipulation in question denies to plaintiff a right of action against Hall and Trichel, it also denies such right as against Donovan et al., since the language used includes all the leases then existing upon the property. One does not, of necessity, convey, with property that he sells, all the rights of action that may have accrued to him during and by reason of, his ownership; and though he may have a tenant with a long lease, who has never paid his rent, his vendee has no right to annul the lease on that account, and the less so if he buys subject to the lease; and the same is true where, as in this case, there is a sale of a long lease and there are subtenants in possession who claim to hold under leases, the authority for which the vendor might dispute, but the contract of sale is silent as to such right, and the vendee buys subject to the leases, knowledge of which he admits, since the obligation to respect the leases constitutes part of the price, and the right to annul them, on grounds previously existing, has not been conferred on him.

It is therefore ordered that the decree

heretofore handed down herein be set aside, and that the judgment appealed from be now affirmed.

LECHE, J., takes no part.